Filed 11/9/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JINSHU "JOHN" ZHANG,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>DENTONS US LLP et al.,<br><br>    Real Parties in Interest. | B314386<br><br>Los Angeles County<br>Super. Ct. No. 21STCV19442 |

ORIGINAL PROCEEDINGS in mandate.  David Sotelo, Judge.  Petition denied.

Murphy Rosen, Paul D. Murphy and Daniel N. Csillag for Petitioner.

No appearance for Respondent.

Gibson, Dunn & Crutcher, Richard J. Doren, James P. Fogelman, Kahn A. Scolnick, Dione Garlick and Daniel R. Adler for Real Parties in Interest.

_____

## SUMMARY

Petitioner Jinshu "John" Zhang was an equity partner in Dentons U.S. LLP (real party in interest or Dentons), a major law firm with offices throughout the United States. A dispute arose between them over a multimillion dollar contingency fee from a client whom petitioner brought to the firm. The partnership agreement contains a clause providing for arbitration of all disputes in Chicago or New York. The partnership agreement also contains a clause delegating all questions of arbitrability to the arbitrator (delegation clause).

Dentons terminated petitioner for cause, asserting a breach of fiduciary duty, and initiated an arbitration in New York. Petitioner then sued Dentons for wrongful termination and other causes of action in Los Angeles Superior Court. Petitioner obtained a temporary restraining order (TRO) and then a preliminary injunction, enjoining the New York arbitration until the court could decide whether there was a clear and unmistakable delegation clause.

After the TRO was issued, Dentons filed a motion under Code of Civil Procedure section 1281.4, seeking a mandatory stay of the case based on its motion to compel arbitration that was then pending in a New York court, which the New York court later granted. In opposition, petitioner argued he was Dentons's employee, and Labor Code section 925 "render[ed] the courts of New York incompetent to rule on Dentons' motion to compel arbitration." Section 925 prohibits an employer from requiring an employee who resides and works in California to agree to a provision requiring the employee to adjudicate outside California a claim arising in California.

Judge Sotelo granted Dentons's motion to stay petitioner's action in superior court pending completion of arbitration in New York. The court ruled the arbitration agreement clearly and unmistakably delegated arbitrability issues to the arbitrator, including the applicability of Labor Code section 925 to the dispute.

Petitioner sought a writ of mandate, which we denied. The Supreme Court granted review and transferred the case back to us, directing us to issue an order to show cause. We did so, and now again deny the petition. We agree with the trial court that the parties delegated questions of arbitrability to the arbitrator. The arbitrability issues in this case include whether petitioner is an employee who may invoke Labor Code section 925 and require the merits of the dispute to be resolved in California instead of New York. We reject petitioner's contention that, because he invoked section 925, the New York court is not "a court of competent jurisdiction" (Code Civ. Proc., § 1281.4) that can order arbitration of this dispute.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1. Background Facts**

Petitioner was a "full interest partner" in Dentons who worked and resided in California. He is a signatory to Dentons's partnership agreement. The partnership agreement has a broad arbitration clause. It covers "all disputes relating to the validity, breach, interpretation or enforcement of this Agreement, as well as all disputes of any kind between or among any of the Partners and/or the Partnership relating to the Partnership and/or the Business, including statutory claims of any kind . . . ." Those disputes "shall be resolved in accordance with the CPR Rules of Non-Administered Arbitration," and the place of arbitration

3

"shall be either Chicago, Illinois or New York, New York."  (CPR is the International Institute for Conflict Prevention & Resolution.)  The CPR Rules also authorize the arbitrator to decide issues of arbitrability.

In 2018, petitioner brought a client to Dentons whom the firm agreed to represent for a fee contingent on the outcome. Petitioner was principally responsible for the matter and resolved it successfully in February 2021, entitling Dentons to the contingency fee.  The fee could not be collected until a later date when certain transfer restrictions were to be removed and Dentons's exact percentages would become ascertainable.  The fee is substantial; according to petitioner's complaint, when collected "it will be the single biggest contingency fee Dentons has ever earned."

Petitioner, whose compensation was determined by the Dentons board, believed the contingency fee "presented an opportunity to negotiate his compensation as it related to the Contingency Fee," but Dentons's chief executive officer, Michael McNamara, told him he would have to wait to negotiate his compensation until the Dentons board undertook its annual compensation review.

Matters thereafter deteriorated.  Dentons asserts petitioner demanded that Dentons guarantee him 90 percent of the contingency fee and place him on the board, and when Dentons declined, petitioner "covertly went to the Client and negotiated an agreement to receive personally 85% of the proceeds of the contingency fee award, contrary to the terms of the Partnership Agreement."  Petitioner asserts that at the end of April 2021, Mr. McNamara and Edward Reich, Dentons's general counsel, arranged the creation of a forgery, purporting to be a letter from

4

the client's representative directing a third party to transfer certain client-held securities worth tens of millions of dollars directly to Dentons.  Petitioner reported the alleged forgery to the board on April 30, 2021, demanding Mr. McNamara's immediate termination.

On May 5, 2021, the Dentons board voted unanimously to terminate petitioner's status as a partner for cause, and initiated an arbitration the same day, alleging petitioner breached the partnership agreement and his fiduciary duty of loyalty to Dentons.

## 2. Arbitration Proceedings in New York and Court Proceedings in California

Litigation in New York and California developed.

On May 14, 2021, Dentons requested an emergency arbitrator from CPR, the arbitral body.  An emergency arbitrator was appointed, and a hearing was scheduled for May 24 to discuss petitioner's objections to jurisdiction.  The emergency arbitrator issued several emergency awards over the following two weeks or so.  Among other things, these awards rejected petitioner's challenges to jurisdiction; the final emergency award on June 10, 2021, required petitioner to make certain disclosures to Dentons about his efforts to collect the contingency fee and prohibited him from misusing confidential information.

Meanwhile, on May 24, 2021, petitioner filed a wrongful termination complaint in Los Angeles Superior Court, naming Dentons, Mr. McNamara and Mr. Reich as defendants.  The next day, he notified the emergency arbitrator he was withdrawing from the arbitration and would apply to a court to stay the arbitration.  On May 26, 2021, petitioner filed a first amended

5

complaint that included a challenge to the arbitrator's jurisdiction.

On June 1, 2021, petitioner filed an application for a TRO and order to show cause why a preliminary injunction should not issue to restrain the New York arbitration. Among the grounds were that only a court could decide the parties' dispute over whether the partnership agreement contained a valid delegation clause, and that Labor Code section 925 prohibits Dentons from arbitrating claims arising from petitioner's California employment in a New York arbitration.

On June 14, 2021, Dentons filed a petition to confirm the three emergency awards in a New York court.

On June 15, 2021, after various proceedings unnecessary to relate, Judge James C. Chalfant issued a TRO enjoining the New York arbitration.

On June 28, 2021, Dentons moved in the New York court to compel arbitration.

That same day, Dentons moved in the Los Angeles Superior Court to stay this case under Code of Civil Procedure section 1281.4. Section 1281.4 requires the court, upon motion, to stay a pending action if an application has been made to "a court of competent jurisdiction" for an order to arbitrate a controversy that is an issue in the pending action.

On July 13, 2021, Judge Chalfant granted petitioner's application for a preliminary injunction of the New York arbitration, stating: "The arbitration in New York is enjoined until the [independent calendar] court acts on [petitioner's] arbitrability claims that the delegation clause is not clear and unmistakable."

6

On August 17, 2021, the independent calendar court (Judge Sotelo) granted Dentons's motion to stay petitioner's lawsuit. The court concluded the arbitration agreement "clearly and unmistakably delegate[s] arbitrability issues to the arbitrator," and "[u]nder this Partnership Agreement, this Court has no jurisdiction to consider Partner Zhang's arguments against enforcement."

The court also ruled that Labor Code section 925 does not require the arbitration to occur in California instead of New York, rejecting petitioner's claim that New York is not a court of competent jurisdiction. The court explained it need not determine whether petitioner "was an employee or something else in his relationship as a Partner at Dentons, because the Partnership Agreement clearly states that 'all disputes relating to the validity, breach, interpretation or enforcement' are to be resolved by the arbitrator." The court further observed that a motion to compel arbitration was currently pending "before a court of competent jurisdiction in New York, New York," and "New York is a court of competent jurisdiction because the Partnership Agreement itself contains a venue provision allowing Dentons to bring an action there." The court also lifted and vacated the preliminary injunction.

### 3.    The Writ Proceedings

On August 19, 2021, petitioner challenged Judge Sotelo's order staying the matter by filing a petition for writ of mandate with this court. The petition asked us to hold that Labor Code section 925 "renders out-of-state courts not competent for purposes of [Code of Civil Procedure section] 1281.4," so that an employer's motion to compel arbitration filed in a foreign court does not trigger a mandatory stay under section 1281.4. After

7

receiving preliminary briefing, we concluded petitioner had not established entitlement to extraordinary relief, and denied the petition.

Petitioner sought review in the Supreme Court, and on February 16, 2022, the Supreme Court granted the petition. The court transferred the matter to us with directions to vacate our order denying mandate and issue an order to show cause why the relief sought should not be granted. The court also granted a stay of the trial court's order lifting its injunction against the New York arbitration, subject to our further consideration. We issued an order to show cause and received further briefing. We again deny the petition.

## DISCUSSION

The New York court is a court of competent jurisdiction to rule on Dentons's motion to compel arbitration. The proposition that Labor Code section 925, when invoked by a plaintiff, automatically strips another state's courts of jurisdiction is unsupported by legal authority, is antithetical to notions of comity, and is at odds with the animating purpose of the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.).

The parties to the partnership agreement clearly and unmistakably delegated questions of arbitrability to the arbitrator. A solid body of law provides that delegation clauses are enforceable. Consequently, the New York arbitrator must decide whether petitioner is an employee and therefore entitled to the protections of Labor Code section 925.

If the arbitrator decides petitioner is an employee for purposes of Labor Code section 925, then (as Dentons concedes), "none of his claims against Dentons, or Dentons' claims against him, would ever be adjudicated outside of California." If the

8

arbitrator decides petitioner is not an employee, section 925 has no application, and the merits of the parties' dispute will be decided by arbitration in New York, as agreed.

**1.    The Statutes**

For ease of reference, we set out the pertinent texts of the two relevant statutory provisions.

Code of Civil Procedure section 1281.4 provides in part: "If an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."[1]

Labor Code section 925 provides in part: "(a)  An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:  [¶]  (1)  Require the employee to adjudicate outside of California a claim arising in California.  [¶]  (2)  Deprive the employee of the substantive

_____

[1]    A similar provision applies "[i]f a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy . . . ."  (Code Civ. Proc., § 1281.4.)  The parties inform us the New York court granted Dentons's motion to compel arbitration, and petitioner filed a notice of appeal of that order.

9

protection of California law with respect to a controversy arising in California. [¶] (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute."[2]

## 2. The New York Court Is a Court of Competent Jurisdiction.

Petitioner contends that "when an employee invokes [Labor Code section] 925, a foreign court is not one of 'competent jurisdiction' under [Code of Civil Procedure section] 1281.4." This is wrong for multiple reasons.

"A court of competent jurisdiction is a court with the power to adjudicate the case before it." (*Lightfoot v. Cendant Mortgage Corp.* (2017) 580 U.S. 82, 91.) By signing the partnership agreement which expressly vests jurisdiction in New York courts, petitioner consented to the jurisdiction of the New York court. It is obviously a court of competent jurisdiction. As petitioner's counsel stated to the New York court that granted Dentons's motion to compel arbitration, "in 99 percent of cases [an agreement] constitutes consent to jurisdiction." It does so here as well.

---

[2] Labor Code section 925 also allows the court to award an employee reasonable attorney fees (*id.,* subd. (c)); states that "adjudication includes litigation and arbitration" (*id.,* subd. (d)); and does not apply to a contract with an employee who is represented by legal counsel in negotiating the terms of an agreement to designate venue or forum or choice of law provisions (*id.,* subd. (e)).

Petitioner insists that Labor Code section 925 changes that jurisdictional principle "when an employee invokes Section 925." But Dentons disputes that petitioner is an employee. As the trial court below stated, "no case indicates that [section] 925 applies automatically." Section 925, subdivision (b) states that a clause requiring an employee to adjudicate claims outside California is voidable by the employee, "and if a provision is rendered void at the request of the employee," the matter must be adjudicated in California. We agree with the Fifth District that "the most plausible interpretation of this language is that an employee is required to request a court to render a decision that the offending clause is void." (*LGCY Power, LLC v. Superior Court* (2022) 75 Cal.App.5th 844, 864 (*LGCY*).) In other words, "a violative clause does not become void simply by the employee declaring an intent to void it." (*Ibid.*)

But we need not decide whether an employee can simply declare a provision void, because this is a case where petitioner's status as an employee is a substantial issue. Petitioner's theory that he may unilaterally deprive the New York courts of jurisdiction to rule on a motion to compel arbitration, by merely invoking Labor Code section 925, finds no support in law and (as we discuss later) is contrary to principles of comity and to the principles underlying the FAA.

Of course, as Dentons admits, it would be equally wrong to assume that petitioner is *not* an employee, as that would allow an employer to evade Labor Code section 925 entirely. At issue here is only the question of *who is to decide* whether petitioner is an employee. As we discuss below, the parties delegated questions of arbitrability to the arbitrator, and petitioner's status is one of those questions.

11

### 3. The Parties Delegated Arbitrability Issues to the Arbitrator

#### a. Petitioner's irrelevance claim

Preliminarily, petitioner contends the trial court erred "in considering the existence of a delegation clause" in connection with Dentons's motion for a stay of litigation under Code of Civil Procedure section 1281.4. He contends the delegation clause is irrelevant, because the question "whether the New York court is of competent jurisdiction to compel arbitration" is not a question of arbitrability. Petitioner is mistaken.

Throughout his briefing, petitioner evades articulating the fundamental issue. When Dentons filed its motion to stay the litigation here, petitioner opposed that motion with the claim that Labor Code section 925, by permitting an employee to void a clause selecting a foreign forum, renders the New York court not competent to compel arbitration. That claim necessarily raises the question whether petitioner is an employee entitled to void the clause in the first place. And that question in turn necessarily requires a ruling on who is to decide whether petitioner is entitled to void the clause: the trial court or the arbitrator. The trial court here clearly understood this, as did Judge Chalfant when he enjoined the New York arbitration "until the [independent calendar] court acts on [petitioner's] arbitrability claims that the delegation clause is not clear and unmistakable."

Several courts have held the applicability of Labor Code section 925 is a question of arbitrability that may be delegated to the arbitrator. For example, *Ratajesak v. New Prime, Inc.* (C.D.Cal. Mar. 20, 2019, No. SA CV 18-9396-DOC (AGRx)) 2019 U.S.Dist. Lexis 70506 (*Ratajesak*) involved motions to compel

12

arbitration of various wage claims on an individual basis under arbitration agreements the defendant contended were governed by Missouri law. (*Id.* at p. *9.) The plaintiffs claimed the agreements could not be enforced under California Labor Code provisions, including section 925. (*Ratajesak,* at pp. *10, *15.) The court "decline[d] to address California policy governing arbitration of unpaid wages when, as here, the parties contracted to delegate questions of arbitrability to the arbitrator." (*Id.* at p. *13.)

Specifically, *Ratajesak* found the agreements clearly and unmistakably provided that disputes, including arbitrability of disputes between the parties, would be resolved by arbitration, and both Missouri and California law required enforcement of the delegation clause. (*Ratajesak, supra,* 2019 U.S.Dist. Lexis 70506 at pp. *13–*14.) The court concluded: "[The] Plaintiffs' arguments regarding the scope of the arbitration agreement; the application of California Labor Code Section 925; and the application [of]California Labor Code Section 229 may well render the claims unarbitrable. *But under the contract, the parties clearly and unmistakably delegated this question to the arbitrator.*" (*Id.* at p. *15, italics added; see also *Smith v. Nerium International, LLC* (C.D.Cal. Sept. 10, 2019, No. SACV 18-01088JVS(PLAx) 2019 U.S.Dist. Lexis 222601, p. *17 ["arguments as to the effect of [Labor Code section 925]—if any—on the arbitration provision are properly reserved for the arbitrator to whom the parties delegated the question of arbitrability"]; *Pacelli v. Augustus Intelligence, Inc.* (S.D.N.Y. 2020) 459 F.Supp.3d 597, 617 ["The applicability of Section 925 is a question of the forum provision's 'enforceability,' " and "[t]he enforceability of a contract is a threshold issue that 'parties may

13

agree to arbitrate' "; California courts have determined that "whether Section 925 is a question of arbitrability" is an issue that can be delegated to the arbitrator].)

Petitioner says that *Ratajesak* "proves the point" that Dentons's motion to stay did not present an arbitrability question. This is a mystifying contention, in support of which petitioner simply repeats his claim that, unlike *Ratajesak*, arbitrability is "not the issue in this proceeding." As we have explained, petitioner's claim to be an employee who can automatically void an agreement to arbitrate in a foreign court is precisely the issue, and in the posture of this case, petitioner's status as an employee (or not) is necessarily a gateway question of arbitrability.

Petitioner claims, "separately," that the trial court "lacked jurisdiction to determine whether a delegation clause exists"; the trial court "was deeply confused about the issues before it," and "under well-established law, it lacked the authority" to analyze the delegation and arbitration clauses in a Code of Civil Procedure section 1281.4 motion to stay. This claim is equally fruitless. Petitioner cites only *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, which held that "a party's inability to afford to pay the costs of arbitration is not a ground on which a trial court may lift a stay of litigation that was imposed pursuant to section 1281.4." (*Id.* at p. 647.) The case has no relevance, except for the general point that the purpose of the stay " 'is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved.' " (*Id.* at p. 658.) Petitioner does not cite the "well-established law" under

14

which he claims the court "lacked the authority" to rule on the delegation clause.[3]

---

[3] Petitioner also relies on the legislative history of Labor Code section 925, and a number of cases, arguing that the Legislature intended to ensure that California employees cannot be forced to litigate or arbitrate their California-based claims outside of California, and intended section 925 to apply "in every case or controversy in which its criteria are satisfied." (*LGCY, supra*, 75 Cal.App.5th at p. 863.) We do not disagree, but that intent does not bear on the question of who is to decide whether petitioner is an employee entitled to invoke section 925. Other cases petitioner cites include *Midwest Motor Supply Co. v. Superior Court* (2020) 56 Cal.App.5th 702, 706, 715 (a forum non conveniens case holding section 925 is triggered by any modification to an employment contract occurring after the statute's effective date); *Lyon v. Neustar, Inc.* (E.D.Cal. May 3, 2019, No. 2:19-cv-00371-KJM-KJN) 2019 U.S.Dist. Lexis 75307, pp. *2, *22 (preliminarily enjoining the defendant from further pursuing litigation or arbitration against the plaintiff outside of California; the plaintiff was likely to succeed on the merits because the employment agreement, as modified to require resolution of all disputes in Virginia, ran afoul of section 925); *Focus Financial Partners, LLC v. Holsopple* (Del.Ch. 2020) 241 A.3d 784, 792, 822 (concluding, "[a]fter a lengthy choice-of-law analysis," that Delaware forum provisions in several employment-related agreements could not support jurisdiction in Delaware, because applying Delaware law "would offend a fundamental policy of the State of California on a matter where California has a materially greater interest"; the defendant employee was entitled to void the Delaware forum and Delaware law provisions under section 925). None of these cases involved the delegation clause of an arbitration agreement.

### b. The delegation clause is clear and unmistakable.

As described in part 1 of the Facts, *ante*, the arbitration clause in the partnership agreement covers "all disputes relating to the validity, breach, interpretation or enforcement of this Agreement," and requires those disputes to be resolved "in accordance with the CPR Rules of Non-Administered Arbitration then currently in effect."

Judge Sotelo's decision granting Dentons's motion to stay first quotes rule 8.1 of the CPR Rules as stating "that '[t]he Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. This authority extends to jurisdictional challenges with respect to both the subject matter of the dispute and the parties to the arbitration.'" The court further stated that there "appears to be no ambiguity that the Partnership Agreement also clearly and unmistakably delegates arbitrability issues to the arbitrator."

There is no dispute over the applicable principles of law on questions of arbitrability. " 'Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability.' " (*Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 654 (*Nelson*).) Federal law is the same. (*Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) ___U.S.___ [139 S.Ct. 524, 530]; *ibid.* ["But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."].)

16

"[T]he best indicator of the parties' intent in a written contract is the words they chose for the agreement." (*Nelson, supra,* 77 Cal.App.5th at p. 654.) " 'Even broad arbitration clauses that expressly delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard.' " (*Id.* at p. 656.)

Here, we have a broad arbitration clause that expressly delegates the enforceability decision to the arbitrator. In addition, the CPR Rules to which the parties agreed are crystal clear on the point. "[W]here the Contract provides for arbitration in conformance with rules that specify the arbitrator will decide the scope of his or her own jurisdiction, the parties' intent is clear and unmistakable, even without a recital in the contract that the arbitrator will decide any dispute over arbitrability." (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 557.)

In his reply, petitioner asserts that the partnership agreement "also empowers courts to adjudicate issues," suggesting those provisions create the uncertainty referred to in *Nelson,* and he has been "denied . . . his right to make these arguments." Petitioner says he cited five provisions of the partnership agreement in his reply to Dentons's preliminary opposition. He does not describe or discuss those provisions in his reply to Dentons's return, requiring us to consult his reply to Dentons's preliminary opposition to find out what they are. We have done so, and our review of the partnership agreement provisions petitioner cited confirms those provisions do not create the "uncertainty" to which *Nelson* refers.[4]

---

[4] In his reply to Dentons's preliminary opposition, petitioner cites a provision (§ 12.5) on litigation expenses that requires each

17

*Nelson* and the other cases petitioner cites involve express statements in the arbitration agreement showing or suggesting "dual delegation." In *Nelson*, the incorporation in the agreement of arbitration rules authorizing the arbitrator to determine arbitrability did not result in a clear and unmistakable delegation, because the agreement itself contained a "simultaneous express statement of broad judicial power to hold 'any provision' of their agreement 'invalid or unenforceable for any reason.' " (*Nelson, supra,* 77 Cal.App.5th at p. 657; *ibid.* ["At best, the dual delegation presented by the facts here—to the

party to pay the party's own attorney fees if any party brings "any legal action, arbitration, or other proceeding with respect to the breach, interpretation, or enforcement of this Agreement." He cites a provision (§ 12.6) on the severability of any provision that is "adjudicated to be void, illegal, invalid, or unenforceable." He cites the dispute resolution provision itself (§ 12.10), which states that the arbitrator "shall have no power or authority to add to, amend, modify or disregard any of the provisions of this Agreement." He cites a section of the dispute resolution provisions entitled "Determinations by the DUS Board" (§ 12.10.1) that states all issues and disputes "relating to the construction and interpretation" of the partnership agreement are to be determined by the board, and refers to "any arbitration or other legal proceeding" concerning such determinations by the board. Finally, he cites the "Confidentiality" section of the dispute resolution provisions (§ 12.10.3) that deems all proceedings and documents concerning any arbitration to be "Confidential Information," and goes on to say that all "documents filed in any federal or state court in connection with the enforcement, interpretation or breach of any provision of this Agreement to be filed under seal." None of these provisions creates any uncertainty about whether the arbitrator—and not the court—is empowered to determine arbitrability issues.

18

arbitrator by reference to AAA rules, and to the court expressly—created uncertainty."].)

Similarly, we held in *Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204 that "[w]here . . . a contract includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision, there is no clear and unmistakable delegation to the arbitrator to decide if the arbitration agreement is unconscionable." (*Id.* at pp. 209–210.) And in *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, the contract contained a broad agreement to submit controversies including the scope or applicability of the agreement to the arbitrator, but also contained a severability provision authorizing " 'a trier of fact of competent jurisdiction' " to determine the enforceability of any provision of the agreement. (*Id.* at pp. 1565–1566.) The use of the phrase "a trier of fact of competent jurisdiction" instead of "arbitration panel" or similar language used in the arbitration provisions of the agreement "suggests the trial court also may find a provision, including the arbitration provision, unenforceable," so there was no clear and unmistakable delegation to the arbitrator. (*Id.* at p. 1566.)

There is no such ambiguity or uncertainty in this case (see fn. 4, *ante*), so petitioner's claim he was "denied . . . his right to make these arguments" is meritless.

4. **Other Considerations: Comity and Preemption**

As previously mentioned (see fn. 1, *ante,* at p. 9), the New York court granted Dentons's motion to compel arbitration on August 20, 2021, expressly finding it had jurisdiction over petitioner by virtue of his execution of the partnership agreement. Our conclusion the arbitrator must decide whether the arbitration may proceed in New York preserves principles of

19

comity, under which judges decline to exercise jurisdiction when matters are more appropriately adjudicated elsewhere. Indeed, we find it difficult to imagine, in the circumstances here, how a California court could justify overriding the New York court's order compelling arbitration.

More important, however, is that petitioner's proposed construction of Labor Code section 925—allowing petitioner to unilaterally void an agreement to arbitrate gateway issues of arbitrability in New York—would be inconsistent with the principles underlying the FAA. Petitioner insists the trial court erred by ruling it could not consider section 925 because of the delegation clause, and that we should decide that issue now, or if not, remand the matter to the trial court to rule on section 925 in the first instance. But the notion that the court may rule on an issue the parties delegated to an arbitrator seems to us to present the kind of obstacle to arbitration that the FAA has long condemned.

The high court's most recent discussion of FAA preemption appears in *Viking River Cruises, Inc. v. Moriana* (2022) ___U.S.___ [142 S.Ct. 1906] (*Viking*). The court recites the fundamental principles with which we are all familiar, including the FAA's " 'equal-treatment principle,' " under which "the FAA 'preempts any state rule discriminating on its face against arbitration.' " (*Viking,* at p. 1917.) That principle is not at issue here, because Labor Code section 925 applies to both litigation and arbitration. But *Viking* also explains: "[U]nder our decisions, even rules that are generally applicable as a formal matter are not immune to preemption by the FAA. [Citations.] Section 2's mandate *protects a right to enforce arbitration*

20

*agreements.*"  (*Viking,* at pp. 1917–1918, italics added.)[5]  That mandate would be seriously compromised if we were to conclude that the invocation of section 925 permits a party to disregard his agreement that the arbitrator is to decide all issues of arbitrability.

Viking explains the point.  "The FAA's mandate is to enforce '*arbitration agreements*.'  [Citation.]  And as we have described it, an arbitration agreement is 'a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.' [Citations.]  An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed.  And so we have said that ' "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum." ' "  (*Viking, supra,* 142 S.Ct. at p. 1919, quoting *Preston v. Ferrer* (2008) 552 U.S. 346, 359; see *Preston,* at p. 359 ["So here, Ferrer relinquishes no substantive rights . . . California law may accord him.  But under the contract he signed, he cannot escape resolution of those rights in an arbitral forum."]; *id.* at pp. 349–350 ["when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA"].)

---

[5]    The FAA's section 2 states:  "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . , or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ."  (9 U.S.C. § 2.)

Here, our enforcement of the parties' agreement to delegate arbitrability decisions to the arbitrator does not "alter or abridge" petitioner's substantive rights under Labor Code section 925; "it merely changes how those rights will be processed." (*Viking, supra,* 142 S.Ct. at p. 1919.) Section 925 presents no conflict with the FAA when we give effect to the parties' agreement to delegate arbitrability issues to the arbitrator. The arbitrator will decide, as agreed, all issues of arbitrability, including whether petitioner is an employee who is entitled to invoke the protections of section 925.

But if Labor Code section 925 were construed, as petitioner would have us do, as enabling him to avoid his agreement to delegate arbitrability issues to the arbitrator by unilaterally declaring himself an employee, and in so doing deprive a foreign court of jurisdiction to compel arbitration, the statute may well " 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives' " of the FAA. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 352.) The question whether section 925 applies was, as we have held, an arbitrability issue. It cannot be decided by a court because the parties agreed otherwise. Any other conclusion would "unduly circumscribe[] the freedom of parties to determine 'the issues subject to arbitration' . . . ." (*Viking, supra,* 142 S.Ct. at p. 1923.)

Petitioner insists "[t]here is no credible preemption issue here," because the "issue underlying the stay motion is whether the New York court is a court of competent jurisdiction," and "*not* whether the dispute is arbitrable or even whether there is a delegation clause." As already discussed at length, petitioner's articulation of the issue is simply wrong. He once again evades the fundamental question of who is to decide whether he is an

22

employee entitled to the protections of Labor Code section 925. Instead, he would have us ignore his agreement to delegate arbitrability issues to the arbitrator and conclude that section 925 automatically renders a New York court incompetent to decide a motion to compel arbitration. That would erect an obstacle to arbitration that is inconsistent with the FAA's principle that parties are free to determine the issues subject to arbitration and that FAA section 2's mandate "protects a right to enforce arbitration agreements." (*Viking, supra,* 142 S.Ct. at pp. 1923, 1918.)

Petitioner points out Labor Code section 925 "applies equally to litigation and arbitration," and asserts there is no preemption issue because "Dentons can still file a petition to compel arbitration" but must do so in California. This ignores the posture of the case, and is just another way of avoiding the central issue. Dentons initiated arbitration in New York as authorized by the partnership agreement. Petitioner resists arbitration by contending that section 925 deprives New York courts of jurisdiction to compel arbitration and asks the California *court* to decide an issue the parties agreed would be decided by the arbitrator.

Finally, petitioner cites *Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.* (9th Cir. 2022) 28 F.4th 956, describing it as "a similar preemption challenge to Section 925." There is no real similarity. *Depuy* concerns Labor Code section 925, but it does not involve the FAA or arbitration. *Depuy* held that section 925, "which grants employees the option to void a forum-selection clause under a limited set of circumstances, determines the threshold question of whether [the employee's] contract contains a valid forum-selection clause." (*Id.* at p. 964.)

23

*Depuy* rejected the claim that a federal law on change of venue (28 U.S.C. § 1404(a)) preempted section 925, stating that nothing in high court decisions "creates a federal rule of contract law that preempts a state law like § 925 from addressing the upstream question of whether the contract sought to be enforced includes a viable forum-selection clause." (*Depuy,* at p. 964.) *Depuy* is not relevant here.

To summarize the point: We agree with Dentons that Labor Code section 925 on its face does not conflict with the FAA. But under petitioner's reading, his invocation of section 925 strips the arbitrator of the authority to decide whether he is an employee entitled to void his agreement to arbitrate in New York, and vests that authority in California courts instead. At a minimum, that result would circumscribe "the freedom of parties to determine 'the issues subject to arbitration' " (*Viking, supra,* 142 S.Ct. at p. 1923) and consequently undermine the animating principles of the FAA.

## CONCLUSION

In sum: New York is a court of competent jurisdiction. The parties delegated questions of arbitrability to the arbitrator. The arbitrator in New York must decide if petitioner is an employee. If the arbitrator decides petitioner is an employee, the merits of the dispute must be decided in California. If the arbitrator decides petitioner is not an employee, then the merits of the dispute must be arbitrated in New York, as agreed. These conclusions preserve comity and avoid undermining the freedom of parties to determine the issues they agree to arbitrate, in consonance with longstanding FAA principles.

24

**DISPOSITION**

The petition is denied.  Costs are awarded to Dentons.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.